UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA LEMUS DE LEMUS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:23-cv-00036-CDB (SS)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRM DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(Doc. 11)<br><br>**<u>14-DAY OBJECTION PERIOD</u>**<br><br><u>Clerk of the Court to Assign District Judge</u> |

Plaintiff Irma Lemus De Lemus ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 9, "AR") and the parties' briefs (Docs. 11, 13, 14), which were submitted without oral argument. Upon review of the record, the undersigned finds and recommends as follows.

## I. BACKGROUND

### A. Administrative Proceedings and ALJ's Decision

On September 8, 2020, Plaintiff filed applications for disability, disability insurance benefits, and supplemental security income with an alleged disability onset date of December 8, 2019. (AR 22). Plaintiff's claim was initially denied on December 17, 2020, and again upon

reconsideration on April 1, 2021. *Id.* Plaintiff requested a hearing before an Administrative Law Judge on May 28, 2021. *Id.* Rosanne M. Dummer, the Administrative Law Judge ("ALJ"), held a telephone hearing on January 14, 2022, during which Plaintiff, with the assistance of a Spanish interpreter and representation by attorney Jonathan O. Pena, and impartial vocational expert Michael A. Klein testified. *Id.* The ALJ issued an unfavorable decision on January 26, 2022, finding Plaintiff was not disabled. (AR 16, 24-36). The Appeals Council denied Plaintiff's request for review on November 4, 2022, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a) and 416.920(a). (AR 24-36). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 8, 2019, the alleged onset date. (AR 24).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: December 2019 pulmonary embolism. *Id.* The ALJ considered the severity of Plaintiff's mental impairments of adjustment disorder with mixed anxiety and depressed mood, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[1] Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 25-26). The ALJ noted she considered both Plaintiff's severe and non-severe

---

[1] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a plaintiff has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.*

impairments in the RFC. (AR 26).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 26).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following non-exertional limitations:

> [Plaintiff] could lift/carry twenty pounds occasionally and ten pounds frequently, sit six of eight hours, and stand/walk six of eight hours; she should not climb any ladders/scaffolds, work at any unprotected heights, nor work around dangerous moving machinery; [she] could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to pulmonary irritants (*e.g.*, fumes, odors, dusts, gases, and poor ventilation).

(AR 26).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted she followed the two-step process as set forth in 20 C.F.R. §§ 404.1529 and 416.929, and SSR 16-3p. (AR 27) (citing Ex. 4E).

Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of symptoms are inconsistent with the record. (AR 28-30). The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment history and notes, activities of daily living ("ADLs"), and prior administrative medical findings, determined that the record does not support limitations that would prevent her from working within the RFC. (AR 30-34). The ALJ concluded that the assessed RFC is supported by the record medical evidence, "routine primary care and specialty follow up, three to four month follow ups, improvement with treatment with limitation for duration, the opinions of the State agency medical, psychological, and psychiatric consultants, reported activities" of daily living, and the inconsistencies in Plaintiff's statements with the record evidence. (AR 34).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work and that transferability of job skills is not an issue. (AR 34-35) (citing 20 C.F.R. §§ 404.1565,

416.965, 404.1568, 416.968). The ALJ found that Plaintiff was a younger individual age on the alleged disability onset date and has a marginal school education. *Id.* (citing 20 C.F.R. §§ 404.1563, 416.963, 404.5164, 416.964).

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 35). The ALJ cited cleaner, laundry bagger, retail marker, assembler, optical assembler, document preparer, charge account clerk, and order clerk based on the testimony of the vocational expert. *Id*. The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from December 8, 2019, the alleged disability onset date, through the date of the decision. (AR 36).

**B. Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. <u>LEGAL STANDARD</u>

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments

recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

///

///

## III. ISSUES AND ANALYSIS[2]

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises two issues:

1. Whether the ALJ failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations; and
2. Whether the ALJ failed to find Plaintiff's mental impairments severe at Step 2 and did not include any limitations in the RFC reflective of Plaintiff's mental limitations.

*See* (Doc. 11 at 2).

### A. Whether the ALJ Failed to Properly Evaluate the Medical Opinions of Record

#### 1. Parties' Contentions

Plaintiff contends the ALJ's RFC determination is unsupported by substantial evidence because she failed to properly evaluate the medical opinions of record in accordance with the prevailing rules and regulations. (Doc. 11 at 7). Plaintiff argues the ALJ improperly discounted as unpersuasive the opinions of Plaintiff's treating providers, Dr. Sanchez and FNP Ramirez, that limited Plaintiff to performing less than sedentary exertion work because those opinions "appeared to be reliant on Plaintiff's subjective reports." *Id.* at 8. Plaintiff separately argues that the ALJ failed to consider and account for the record evidence demonstrating her experiencing fatigue. *Id.* at 10-11. Plaintiff asserts that the ALJ failed to properly consider the supportability and consistency of the opinions such that the ALJ's decision is unsupported by substantial evidence and remand is required. *Id.* at 8-12.

Defendant contends that the ALJ properly assessed the prior administrative medical findings in finding the medical opinions of Dr. Herbert Sanchez and Nurse Ramirez of "little persuasive value[.]" (Doc. 13 at 16). Defendant asserts the ALJ properly discounted Dr. Sanchez's opinion as internally inconsistent and inconsistent with the record evidence where Dr. Sanchez opined that Plaintiff had no mental limitations that preclude work while later opining that Plaintiff's mental health symptoms would exacerbate her pain and other physical symptoms such that she would be absent from work four days per month. *Id.* at 18. Defendant argues the ALJ properly

---

[2] Filings are referenced herein according to the associated CM/ECF-designated pagination.

discounted Nurse Ramirez's opinion as unpersuasive given Ramirez's extreme limitations were inconsistent with the overall record evidence. *Id.* at 19-23. As to Plaintiff's arguments that the ALJ failed to consider and account for her fatigue, Defendant argues the ALJ did, in fact, address Plaintiff's fatigue symptoms, and that in any event, the record evidence of fatigue was minimal and inconsistent and revealed mild fatigue at most.

2. <u>Governing Authority</u>

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the [plaintiff]; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words,

"[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [she] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

3. Dr. Sanchez's Opinion

Dr. Herbert Estiv Sanchez, Plaintiff's treating physician, drafted a mental RFC statement of Plaintiff on November 8, 2021, and a physical medical source statement on November 16, 2021. (AR 883, 886). As to her physical evaluation, Dr. Sanchez opined that Plaintiff has diagnoses of asthma, pulmonary embolism, and depression with "good" prognosis. (AR 880). He opined that Plaintiff could sit more than two hours, stand 15 minutes, needs to shift positions and walk for 15-minute periods of time at work, did not need to take unscheduled breaks during a workday, and did not need any ambulatory assistive device. (AR 881). He opined that Plaintiff could rarely lift and carry ten pounds or less, and could rarely stoop (bend), crouch/squat, climb stairs and ladders. (AR 882). He assessed Plaintiff is capable of low stress work, would likely be off task 15% of time in a typical workday, and would be absent from work about four days per month. *Id.*

In the mental evaluation, Dr. Sanchez assessed "category 1" findings such that Plaintiff's mental abilities to understanding and memory and adaptation do not preclude performance of any

aspect of work. (AR 884-885). Dr. Sanchez opined that Plaintiff's behavioral conditions of anxiety and depression exacerbate her pain and physical symptoms, and that he is likely to be absent from work four days per month depending on the workday. (AR 885-886).

4. FNP Ramirez's Opinion

Plaintiff's nurse practitioner, FNP Grisell Ramirez, similarly drafted a physical medical source statement on July 9, 2021. (AR 831). She noted Plaintiff's diagnoses of mild asthma, history of pulmonary embolism, depression, and anxiety, and her symptoms including fatigue, activity intolerance, depressed mood and anxiety. (AR 828). She assessed that her impairments could be expected to last at least 12 months and that emotional factors would contribute to the severity of Plaintiff's symptoms and limitations. *Id.* FNP Ramirez assessed Plaintiff could walk about half a block without rest or severe pain, could sit more than 45 minutes at a time every two hours, could stand 15 minutes at a time every hour, could stand/walk less than two hours and sit about two hours total during a workday, and needs to shift at work. (AR 828-829). She assessed Plaintiff would have concentration issues about once every one to two hours during a workday, is incapable of even low stress work due to her anxiety and depression and would miss work about one day per month. (AR 830-831).

5. Analysis

Plaintiff's arguments that the ALJ improperly discounted the opinions of Dr. Sanchez and FNP Ramirez are largely conclusory without record support. First, although she argues that the ALJ failed to adequately explain her reasons for finding the medical opinions unpersuasive (Doc. 11 at 8), she offers no examples of such deficiencies. Second, she complains that the ALJ selectively ignored treatment notes indicating anything more than benign findings (*id*. at 9), but the only example she identifies is that "Plaintiff was repeatedly noted to have decreased breath sounds, positive findings on objective imaging, and notations of fatigue (*id*. at 10).

Regarding Dr. Sanchez, the ALJ acknowledged his November 2021 assessment of Plaintiff's physical and mental functioning that Plaintiff had "category 1" no mental limitations to preclude work but that due to Plaintiff's medical issues, including her anxiety and depression, her behavioral health would exacerbate pain and other physical symptoms such that she would be

absent from work four days per month depending on the type of work/duty. (AR 32) (citing Ex. 15). The ALJ further noted Dr. Sanchez's findings that Plaintiff had no intellectual deficits. *Id.*; *see* (AR 884-887). The ALJ found the opinion had little persuasive value because it is inconsistent with the record evidence and internally. The ALJ found inconsistent the assessment of significant work restrictions that Plaintiff would miss four days per month while Dr. Sanchez assessed no mental limitations and because Dr. Sanchez's physical examination showed normal findings, no objective mental health issues noted, and only minimal depression. *Id.* The ALJ cited a November 24, 2021, primary care visit which demonstrated generally normal, objective mental status examination findings. (AR 891).

Regarding FNP Ramirez, the ALJ acknowledged the assessment of Plaintiff's diagnoses of mild asthma, history of pulmonary embolism, depression and anxiety, and noted her physical limitations of lifting/carrying less than ten pounds occasionally and ten pounds rarely, that Plaintiff could occasionally twist, and rarely stoop, crouch, or climb stairs/ladders, could walk half a block, sit 2.75 hours at one time, stand 1.25 hours at a time, stand/walk less than two of eight hours, and sit about two of eight hours. (AR 33). The ALJ noted FNP Ramirez assessed that Plaintiff's emotional factors would contribute to the severity of her limitations, that she would be off task 20% of the workday, would be incapable of "even low stress work" due to anxiety and depression, that she would be absent one day per month, and would have concentration issues once every hour or two. *Id.* (citing Ex. 11F).

The undersigned disagrees with Plaintiff that the ALJ failed to articulate her reasoning for finding the medical opinions unsupported and inconsistent and, thus, of little persuasive value. The ALJ acknowledged both providers were Plaintiff's longstanding, treating clinicians but that the opinions and assessed limitations are not supported by the evidence. (AR 33). The ALJ found the opinions unsupported because it appears both Dr. Sanchez and FNP Ramirez relied on Plaintiff's subjective complaints without meaningful consideration of or reference to any other relevant record evidence to support their assessed limitations that were more significant than the RFC. *Miller v. Colvin*, No. CV 15-7388-AGR, 2016 WL 4059636, at *3 n.4 (C.D. Cal. July 28, 2016) (finding "Dr. Vicary's reports do not cite or describe any basis for the conclusions reached" such that the

court found the medical opinion unsupported by clinical findings). The ALJ explained her findings by providing a detailed explanation of relevant objective medical evidence, including that Plaintiff's physical examination records from January 2021, September 2021, and November 2021 showed generally normal physical examination findings as to his breathing, heart rate and rhythm, muscoskeletal range of motion, and motor strength such that Dr. Sanchez and FNP Ramirez's assessed physical and work-related limitations were not supported. *Id.*; *see* (AR 770 [July 6, 2021, progress note by FNP Ramirez noting finding Plaintiff was negative for cough, shortness of breath, and wheezing], 844 [November 29, 2021 physical examination showing Plaintiff previously complained about having chest pain and shortness of breath but impression at examination showed she had no problems with shortness of breath or chest pain], 919 [December 3, 2021, physical examination showing normal breath, cardiovascular rhythm, range of motion, and well-developed constitution). *See Woods*, 32 F.4th at 791-92; *see also Reddick*, 157 F.3d at 725 (ALJ must "set forth his own interpretations and explain why they, rather than the doctors, are correct.").

The ALJ also found the providers' opinions were inconsistent on this record and internally. Though Dr. Sanchez's medical source statements indicate he has been in contact with Plaintiff as early as September 14, 2021, the ALJ correctly considered Dr. Sanchez's assessment—that Plaintiff would miss work due to his anxiety and depression—was inconsistent given Dr. Sanchez assessed category 1 findings as to Plaintiff's mental abilities in understanding, concentration, memory, adaptation, and social interaction such that none preclude Plaintiff's performance in any aspect of work, and that Dr. Sanchez found Plaintiff was capable of low stress work. *See* (AR 883-884). Further, because the ALJ showed the overall record evidence is consistent with a range of light work while acknowledging Plaintiff had occasional postural limitations by referencing various physical examination findings to support that conclusion, the ALJ properly discounted both FNP Ramirez and Dr. Sanchez's opinions as inconsistent with the overall record evidence. (AR 34) (citing Exs. 2F, 3F, 6F, 8F, 12F, 16F). Additionally, the ALJ considered that Plaintiff reported she walks 40 minutes a day and is capable of performing personal care activities as inconsistent with FNP Ramirez's physical limitations, including that Plaintiff could walk only half a block and is incapable of low stress work. (AR 34). "An ALJ properly may consider a plaintiff's reported

activities in evaluating the persuasiveness of medical opinions." *Donnelly v. Comm'r of Soc. Sec.*, No. 1:21-cv-01117-CDB (SS), 2025 WL 1473954, at *9 (E.D. Cal. May 22, 2025) (citing *Leonard v. Comm'r of Soc. Sec.*, No. 1:21-cv-00627-EPG, 2022 WL 4123990, at *4 (E.D. Cal. Sept. 9, 2022) ("[W]hen considered in conjunction with the rest of the ALJ's reasoning, the ALJ's reliance on Plaintiff's daily activities—caring for her cat, preparing simple meals, cleaning, and sometimes administering her father's insulin, etc.—is a reasonable basis to discount the severe limitations assessed [in a medical opinion]")). "This analysis comports with the applicable standards setting forth 'supportability' and 'consistency' as the most important factors when evaluating opinions in the record." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)).

The undersigned also disagrees with Plaintiff that the ALJ's supportability/consistency analysis is infirm because she failed to properly consider and account for record evidence of Plaintiff's fatigue and related symptoms. First, to the contrary, the ALJ repeatedly acknowledged and weighed the record evidence of Plaintiff's fatigue. (AR 29, 31, 33-34). Second, as the ALJ noted, the evidence reflected that Plaintiff's fatigue was only "mild" and varied in frequency. *Id.* Plaintiff does not identify any record evidence to the contrary and does not develop further how the ALJ's treatment of Plaintiff's fatigue undermined the discounting of the two medical opinions on supportability and consistency grounds.

Therefore, the ALJ properly addressed how she considered the supportability and consistency of Dr. Sanchez's and FNP Ramirez's opinions in finding the opinions of little persuasive value. *See id; Woods*, 32 F. 4th at 791-92; *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("the ALJ must explain how the agency considered the supportability and consistency of a medical opinion.… [T]he ALJ [is not allowed] to forego articulation of their 'reason or reasons' altogether; rather, [the new regulations] provide specific articulation requirements.").

///

///

**B. Whether the ALJ Failed to Find Plaintiff's Mental Impairments Severe at Step 2 and Did Not Include Any Limitations in the RFC Reflective of Plaintiff's Mental Limitations**

1. <u>Parties' Contentions</u>

Plaintiff contends the ALJ's decision is unsupported by substantial evidence because she failed to find Plaintiff's mental impairments severe at Step 2 and did not include any limitations in the RFC consistent with her mental limitations. (Doc. 11 at 12). Plaintiff argues that the ALJ improperly focused on the lack of objective findings in the record as opposed to noting that Plaintiff's mental impairments did not lend itself to such findings. *Id.* at 13. Plaintiff asserts the ALJ ignored the positive objective findings that did exist in the record, such as findings of her namely abnormal mood, affect, behavior, and thought process. *Id.* at 13-14. Plaintiff further argues the ALJ's notation that Plaintiff could interact with medical providers does not equate to her ability to interact with supervisors, coworkers, or the public on a regular and continuing basis. *Id.* at 14. Lastly, Plaintiff contends the ALJ's determination is undermined by FNP Ramirez's opinion that Plaintiff's condition was impacted by her mental impairments such that she was more than minimally limited in her ability to perform work-like functions. *Id.*

Defendant argues that the ALJ properly categorized Plaintiff's mental impairments of adjustment disorder with mixed anxiety and depressed mood as non-severe. (Doc. 13 at 7). Defendant contends the ALJ properly considered the Paragraph B criteria in finding that Plaintiff had no limitation in each area other than a mild limitation in concentrating, persisting, and maintaining pace. *Id.* at 8. Defendant asserts the ALJ properly considered Nurse Ramirez's statement—that Plaintiff's symptoms would be severe enough to interfere with the attention and concentration needed to perform work for 20% of the workday—and explained despite the statement, the record showed Plaintiff had normal cognitive functioning for attention and concentration. *Id.* at 9. Defendant contends the ALJ found that the objective medical evidence affirmatively showed that Plaintiff had, at most, mild limitation in concentrating, persisting, and maintaining pace. *Id.* at 11. Defendant further argues that the ALJ properly explained the medical sources assessed Plaintiff with no mental limitations. *Id.* at 13-14.

In reply, Plaintiff argues Defendant merely summarizes the ALJ's decision and Plaintiff's opening brief and does not provide a legal contention in response to Plaintiff's claims. (Doc. 14 at 1).

2. Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (citing SSR 85-28). Moreover, once the ALJ finds the plaintiff has at least one severe impairment at Step Two, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Thus, if step two is resolved in the plaintiff's favor, any error is harmless so long at the ALJ considered limitations from all of the plaintiff's impairments when formulating the RFC. *See Peebles v. Saul*, 827 F. App'x 727, 729 (9th Cir. 2020) (citing *Buck*, 869 F. 3d at 1048-49).

In regards to mental impairments and the rating of degree of limitation in each of the four

paragraph B functional areas, an ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ rates the plaintiff's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the plaintiff's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Legal error occurs when an ALJ neglects to document her application of the paragraph B criteria or fails to include a specific finding as to the degree of limitation in any of the four functional areas. *See Keyser*, 648 F.3d at 725-26.

Substantial evidence supports an ALJ's finding that a plaintiff's mental impairments are non-severe if (1) she properly considered the plaintiff's mental health records, (2) she properly considered the Paragraph B criteria, and (3) the record supports her findings regarding the non-severity. *See Woods*, 32 F.4th at 794.

3. <u>Analysis</u>

In her analysis of the paragraph B considerations, the ALJ explained Plaintiff's mental impairments did not cause more than minimal limitations to her ability to perform basic mental work activities by referencing a chronology of treatment records from June to November 2021 that showed Plaintiff had normal mental examination findings and no limitations in understanding, remembering, or applying information and in interacting with others. (AR 25); *see, e.g.* (AR 778 [April 6, 2021, mental status examination showing unremarkable thought process, grossly intact memory, and other normal mental status findings], 891 [December 3, 2021, mental status examination showing normal findings and "[h]igher cognitive functioning"]). The ALJ found Plaintiff had only a mild limitation in concentrating, persisting, and maintaining pace in acknowledging a July 2021 physician statement to that effect but noting a follow-up note from November 2021 showed otherwise normal findings as to Plaintiff's attention and concentration. *Id.*

Plaintiff argues that the ALJ improperly focused on "the lack of objective findings" in discounting the severity of Plaintiff's mental impairments. But she cites no record evidence of or examples demonstrating the ALJ's impropriety in this regard. (Doc. 11 at 13). The Court independently has considered the ALJ's opinion and finds this allegation of error to be unsupported.

Plaintiff also argues the ALJ "wholly ignored the positive objective findings that did exist within the record, namely abnormal mood, affect, behavior, and thought processes." (Doc. 11 at 13). This also is inaccurate, as the ALJ expressly noted medical records referring to Plaintiff's "depressed mood" (AR 30) (citing November 16, 2021, office visit), but also other treatment records documenting Plaintiff's self-report of a "normal" mood and observation of normal affect. (AR 25) (citing June 8, 2021, "Behaviorist Assessment"); (AR 30) (citing November 24, 2021, "Mental Status Examination"). Although FNP Ramirez's opinions regarding the severity of Plaintiff's mental health as it relates to her ability to perform work were contrary to the ALJ's findings in this regard, as discussed above, the ALJ permissibly discounted the persuasiveness of those opinions.

Plaintiff separately complains that the ALJ improperly correlated her ability to interact with medical providers as informative of her ability to work with supervisors, coworkers, or the public. (Doc. 11 at 14). Although Plaintiff may be correct that any such analysis would not, standing alone, satisfy the substantial evidence standard, Plaintiff cites no authority, and there otherwise is no reason to conclude, that the ALJ's observation in this regard constituted error.

The mere diagnoses by Dr. Sanchez and FNP Ramirez of Plaintiff's anxiety and depression is not a proper ground for finding that the ALJ errored in deeming her mental impairments non-severe. *See Jose S. v. Kijakazi*, Case No. 2:20-cv-09561-GJS, 2022 WL 837416, at *2 (C.D. Cal. Mar. 21, 2022) ("[A] diagnosis alone does not establish disability."); *Draiman v. Berryhill*, No. CV 17-747-KS, 2018 WL 895445, at *7 (C.D. Cal. Feb. 13, 2018) (finding that a plaintiff's "diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder are insufficient to demonstrate that she has a severe mental impairment" at Step Two); *Miller*, 2016 WL 4059636, at *3 ("An ALJ 'need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'") (citation omitted). The ALJ properly considered that FNP Ramirez's finding that Plaintiff would have concentration issues that would interfere with her ability to work for 20% in a typical workday was unsupported and did not show Plaintiff's mental impairments were severe. (AR 25); *see* (AR 828).

Because the ALJ considered Plaintiff's mental health records, provided an adequate

explanation for each functional area rating she gave under the paragraph B criteria to support her finding that Plaintiff's mental impairments were not severe, and properly considered the medical opinion evidence, the ALJ properly found Plaintiff's mental impairments of adjustment disorder with mixed anxiety and depressed mood are non-severe. *See Woods*, 32 F.4th at 794.

## IV. CONCLUSION AND RECOMMENDATION

The Clerk of the Court is DIRECTED to randomly assign a District Judge to this action.

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 11) be DENIED;
2. The ALJ's decision (Doc. 9) be AFFIRMED; and
3. The Clerk of the Court be DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security, terminate any deadlines, and close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within 14 days** after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 28, 2026**

UNITED STATES MAGISTRATE JUDGE